UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA                    CRIMINAL ACTION


V.                                          NO. 18-118


WILLIAM McGINNESS, ET AL.                   SECTION F


ORDER AND REASONS

Before the Court is defendant Dr. Alex Madriaga's appeal of magistrate judge's order denying his motion to travel.  For the reasons that follow, the magistrate judge's order denying the motion to travel is REVERSED, and the defendant's motion to travel is GRANTED.

**Background**

This is a criminal conspiracy case in which Alex Madriaga stands charged along with four other individuals with conspiring to facilitate the transportation, concealment, or sale of CITES-protected species (specifically, certain species of macaw birds), knowing that they were intended for export contrary to the

1

Endangered Species Act, as well as conspiring to knowingly make or submit false records of wildlife that had been or were intended to be transported in foreign commerce in violation of the Lacey Act.[1]

On May 2, 2018, Dr. Alex Madriaga (a veterinarian licensed to practice in California) and his wife, Filomena Reyes Madriaga, booked a cruise to Australia and New Zealand through AAA Travel Agency.  Residents of California, they are scheduled to depart Los Angeles on Sunday, October 21 and return to Los Angeles on Monday, November 5.  About five days after the Madriagas booked their cruise, on May 7, 2018, the Department of Justice sent a target letter to Dr. Madriaga, informing him that he was "a target of a federal criminal investigation involving conspiracy to export CITES [Convention on International Trade in Endangered Species] protected birds" and that the government was "considering the matter for presentation to a Federal Grand Jury."  Dr. Madriaga was never subpoenaed by the Grand Jury.

Less than one month later, in May 2018, Alex Madriaga was charged with four others in an Indictment charging a two-prong conspiracy:  (1) knowingly facilitate the transportation,

---

[1] The government alleges as on overt act that, on July 12, 2015, at the request of co-defendant William McGinness, Alex Madriaga signed a Department of Agriculture Veterinary Health Certificate falsely certifying that the birds had been in quarantine for 21 days and that the health certificate originated in Louisiana.

2

concealment, or sale of merchandise, knowing they were intended for export contrary to the Endangered Species Act, 16 U.S.C. §§ 1538(c) and (e); and (2) knowingly make and submit or cause to be made and submitted, false records of wildlife that had been or were intended to be transported in foreign commerce in violation of the Lacey Act, 18 U.S.C. § 554 and 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A).  The singular overt act mentioning Dr. Madriaga is that, at the request of co-conspirator McGinness, Madriaga signed a Department of Agriculture veterinary health certificate, falsely certifying that the CITES-protected birds had been in quarantine for 21 days and that the health certificate originated in Louisiana.

On June 25, 2018, Dr. Madriaga traveled to New Orleans with his daughter for his arraignment, at which time Magistrate Judge Wilkinson set a $100,000 unsecured bond.  As a condition of release, Dr. Madriaga was ordered to surrender his passport and it was further ordered that his travel be restricted to the Central District of California (where he resides) and the Eastern District of Louisiana, with allowance to travel in the continental United States with prior approval of the U.S. Probation Office.  The government did not oppose his pretrial release, but did request that Dr. Madriaga surrender his passport, which he did.

On September 20, 2018, Dr. Madriaga filed a motion requesting permission to travel to Australia and New Zealand from October 21 to November 5, 2018.  Neither U.S. Probation Officer assigned to Dr. Madriaga objects to Dr. Madriaga's request to travel.  However, the government opposed the motion.  Magistrate Judge Wilkinson heard oral argument on an expedited basis, and denied the motion to travel on October 9, 2018.  Dr. Madriaga now appeals that ruling, and asks that the Court reverse the magistrate judge's order and grant the motion to travel.

I.

18 U.S.C. § 3142(b) provides that a defendant "shall" be released on personal recognizance or upon the execution of an unsecured appearance bond unless the Court determines that such release "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." If the Court finds that such release will not reasonably assure that the defendant will appear, or that it will endanger the safety of any other person of the community, it may order a condition or combination of conditions, including specified restrictions on travel.  18 U.S.C. § 1342(a), (b), and (c)(1)(B)(iv).  The Fifth Circuit has observed that "the conditions of the bail are left to the discretion of the issuing authority as long as those conditions are necessary to reasonably assure the

4

appearance of the person as required.... Restrictions as to travel and association are specifically authorized by 18 U.S.C.A. § 3146(A)(2)." <u>United States v. Cook</u>, 428 F.2d 460, 461 (5th Cir. 1970).  In reviewing an order by a magistrate judge as to pretrial release, the district court acts *de novo*.  <u>United States v. Arias</u>, 119 F.3d 2 (5th Cir. 1997); 18 U.S.C. § 3145.

II.

The facts pertinent to Dr. Madriaga's request for travel are not disputed.  Dr. Madriaga is a 76 year old veterinarian whom has lived in southern California, along with his wife, for 30 years. He lives in close proximity to his five children and 12 grandchildren.  Before he received the Department of Justice target letter, he reserved a trip with his wife for an overseas cruise between Australia and New Zealand.  After receiving a target letter followed by a summons notifying him of the Indictment against him, Dr. Madriaga traveled from California to New Orleans on June 25, 2018 for his initial appearance and arraignment. Dr. Madriaga was released on bond and has been compliant with the terms of his pretrial release.  Neither his pretrial service officer in California nor in New Orleans oppose his request for travel.

The government opposes the request to travel because Dr. Madriaga was born in the Philippines and holds dual citizenship. This, the government suggests, means that Dr. Madriaga is a flight

risk because he is charged with a felony and, if convicted, could be sentenced to a period of incarceration. The government suggests that, although he is scheduled to travel to Australia and New Zealand, there is a risk he may not return to the United States no matter which foreign country he visits. If allowed to leave the United States, the government fears, Dr. Madriaga could take up residency in Australia, New Zealand, or the Philippines.

The government's concern that Dr. Madriaga is a flight risk is weak at best. Dr. Madriaga is 76 years old, planned this trip before he became a target, and has very close ties to his California community: his immediate family (five children and 12 grandchildren) live in southern California less than 30 minutes from where he has lived for 30 years.

The government offers no basis for its suggestion that Dr. Madriaga is a flight risk, other than its speculation that his dual citizenship status might entice him to flee. This ignores the fact that Dr. Madriaga has lived in the United States for nearly 40 years (more than half of his life), and that his immediate family resides within 30 minutes of his house in southern California.

Dr. Madriaga argues that the travel restriction is not the least restrictive condition available to reasonably assure his appearance in court. He notes, and the submitted itinerary (which

the government does not challenge) indicates that, once he and his wife arrive in New Zealand, they immediately board a ship for a 13-day cruise between New Zealand and Australia.  This undermines the government's concern that "nothing will prevent him" from fleeing a passenger cruise ship to escape to the Philippines.  As his counsel points out, Dr. Madriaga has cooperatively traveled from his house in California to New Orleans after receiving a summons for his court appearance.  This conduct, the totality of the circumstances, and the fact that both of his probation/pretrial services officers do not indicate that he is a flight risk are persuasive indicators that Dr. Madriaga's appearance at his criminal proceedings here in New Orleans will be reasonably assured, notwithstanding being permitted to travel on a pre-planned cruise with his wife.[2]

Accordingly, IT IS ORDERED: that the magistrate judge's order denying the motion to travel is hereby REVERSED, and the defendant's motion to travel is hereby GRANTED.  IT IS FURTHER ORDERED: that the defendant's passport shall be returned to him immediately for the limited purpose of his pre-scheduled travel, leaving on October 21, 2018, and that, within 24 hours of his

---

[2] To be sure, conditions of pretrial release are not intended to punish defendants, who have not yet been convicted of or sentenced for the charged offenses at issue.

return to the United States, Dr. Madriaga shall return his passport

to the United States Probation Office.

New Orleans, Louisiana, October 17, 2018


MARTIN L.C. FELDMAN
U.S. DISTRICT JUDGE